UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNDRAY KNIGHTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00245-JPH-MJD |
| | ) |
| S. LANTRIP, | ) |
| F. JEFFERY, | ) |
| DONALDSON, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Undray Knighten, an Indiana prisoner, brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sgt. Lantrip, Correctional Officer Jeffery, and Sgt. Donaldson violated his Eighth Amendment rights by denying him access to medical care. Specifically, Mr. Knighten alleges that they failed to properly respond after learning that he had fallen and hit his face, and after he reported a parasitic infection.[1] The defendants seek summary judgment. They argue that each time Mr. Knighten asked to be seen by a medical provider, they took steps to facilitate his access to medical care. Because there is no evidence in the record that the defendants were responsible for the delays in medical care or that Mr. Knighten was injured as a result of the

---

[1] Mr. Knighten also references the Fourteenth Amendment in arguing against summary judgment. Dkt. 71 at p. 2. However, no independent due process claim was alleged in the complaint or identified in the Court's screening order. Dkt. 12 at p. 3 (finding Eighth Amendment claim and setting deadline for plaintiff to identify any overlooked claims). Instead, Mr. Knighten is understood to reference the Fourteenth Amendment because the protections of the Eighth Amendment are incorporated against the States through the Fourteenth Amendment. *See Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019) (discussing incorporation of Bill of Rights guarantees and finding that Eighth Amendment rights may be enforced against the States under the Fourteenth Amendment); *Torres v. Madrid,* 141 S. Ct. 989, 997 (2021).

defendants' actions or inactions, the defendants' motion for summary judgment, dkt. [68], is **granted.**

# I.
# Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable

jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Facts and Background

### A. Fainting Spells

Mr. Knighten suffers from fainting spells. On November 24, 2017, Mr. Knighten exited his cell to order commissary, but after taking just three steps, he passed out and fell face-first to the floor. Dkt. 68-4 at p. 96-97; Dkt. 71 at p. 3. He sought assistance from Sgt. Lantrip and Officer Jeffrey, who were employed as custody staff at the time and were working in the area where Mr. Knighten had fallen. Dkt. 68-4 at p. 10 (Knighten Transcript). When Mr. Knighten "came to", Officer Jeffrey and Sgt. Lantrip were there. *Id.* at p. 19. Mr. Knighten's lip was split (his bottom teeth cut his top lip) and he told Officer Jeffrey that he needed medical attention. *Id.* at pp. 19-21. Officer Jeffrey reported that he had "called the sergeant back and they said ok, the nurse was coming over and they they'll have a nurse see me." *Id.*, at p. 21. Despite being told that a nurse was going to see him, Mr. Knighten was not seen until the next day. *Id*.

On November 25, 2017, Mr. Knighten saw Sgt. Lantrip with the nurse. *Id.* at p. 21. Mr. Knighten showed Sgt. Lantrip his swollen face, black eye, and busted lip. He reported that his jaw hit the concrete and pops when he opens his mouth. *Id.* at p. 22. Sgt. Lantrip left and returned with the nurse. Dkt. 68-4 at p. 22; Dkt. 68-5 at p. 106 (medical record reporting: "Reason for visit: seen at the request of custody [staff]."). Mr. Knighten told the nurse that on the prior day, he was a few feet from his cell door when he fell on the right side of his face, and that he does not remember the incident. *Id.* The nurse told Mr. Knighten she would put him on a list to see a doctor. Dkt. 68-4 at p. 22.

Two weeks passed and Mr. Knighten had still not seen a doctor. *Id.* Mr. Knighten asked Officer Jeffrey for assistance and Officer Jeffrey located a nurse to speak with Mr. Knighten. *Id.* Officer Jeffrey supported Mr. Knighten during this encounter by reassuring the nurse that Mr. Knighten was telling the truth about his injury.[2] *Id.* at p. 23. Once again, medical staff agreed to put Mr. Knighten on a list to see a doctor. *Id.*

After this encounter, anytime Mr. Knighten spoke to Sgt. Lantrip or Officer Jeffery about getting medical care, Mr. Knighten was told to fill out a healthcare request form. Dkt. 68-4 at p. 31. Mr. Knighten filled out the form and submitted it. *Id.* In addition, Mr. Knighten saw a nurse regularly when his regular medication was brought to his cell. *Id.* at p. 31. Mr. Knighten told the nurse he needed to see a doctor and the nurse would tell him to fill out a healthcare request form. *Id.* at p. 32. Mr. Knighten acknowledges that at no point did Sgt. Lantrip or Officer Jeffrey refuse to let Mr. Knighten see a nurse. Dkt. 68-4 at p. 26-27.

Mr. Knighten was finally seen by Dr. Samuel Byrd, M.D., for a chronic care visit on December 20, 2017. Dkt. 71 at p. 5; Dkt. 68-5 at p. 98.

### B. Parasites

On December 29, 2017, Mr. Knighten told Sgt. Donaldson that he believed he was experiencing a "parasite problem." Dkt. 68-4 at pp. 44; 52. Mr. Knighten was upset because Sgt. Donaldson did not take him seriously. *Id.* at p. 34. Specifically, in response to Mr. Knighten's

---

[2] In response to the motion for summary judgment, Mr. Knighten states that Officer Jeffrey has never talked to a nurse for him nor has Officer Jeffery ever escorted him to see a nurse or doctor. Dkt. 71 at p. 5. But the defendant's statement of material facts is based on Mr. Knighten's own deposition testimony. *See* dkt. 68-4 at p. 23 (Transcript). "'As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.'" *Hickey v. Protective Life Corp.*, 988 F.3d 380, 389 (7th Cir. 2021) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). Accordingly, Mr. Knighten's assertion that Officer Jeffrey never assisted him in contacting a nurse is not considered as evidence for the purpose of resolving this motion.

complaints, Sgt. Donaldson called the psychiatrist, when instead Mr. Knighten believes he should have been sent to a medical doctor. *Id.* at p. 56. Mr. Knighten was seen that same day by a counselor for a mental status exam. *Id.*, ¶ 53; dkt. 68-5 at p. 95. The counselor visited Mr. Knighten and noted that he was complaining about "bugs" in his laundry and property. Dkt. 68-5 at p. 96. Mr. Knighten was later seen by Dr. Byrd and was able to discuss his concerns regarding parasites. Dkt. 68-4 at p. 54-55. However, during this consultation, Sgt. Donaldson was seated nearby and made a joke about it, saying Mr. Knighten had been locked up so long that he was going crazy. *Id.* at 54-55.

On December 30, 2017, Mr. Knighten was again seen by a nurse, during which time he was asked if he wanted "shampoo for lice." Dkt. 71 at p. 7; dkt. 68-5 at p. 93.

## III.
## DISCUSSION

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need, meaning 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Thomas v. Blackard*, 2 F.4th 716 (7th Cir. 2021) (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (citation omitted)); see also *Estelle v. Gamble*, 429 U.S. 97 (1976). Thus, to survive summary judgment, Mr. Knighten must demonstrate that he had an objectively serious medical condition and that the defendants were deliberately indifferent to his health or safety. *Jones v. Mathews*, 2 F.4th 607 (7th Cir. 2021).

"A significant delay in effective medical treatment [] may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Importantly, however, "the plaintiff must show that the defendant's actions or inaction caused the delay in his treatment." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citing *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("Under any theory, to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." (citation and internal quotation marks omitted))).

For the reasons explained below, there is no evidence that the defendants were deliberately indifferent to Mr. Knighten's November 24, 2017 fall or his concerns regarding bugs or a parasitic infection.

### B. Claims Against Officer Jeffrey and Sgt. Lantrip

Mr. Knighten alleges that Officer Jeffery and Sgt. Lantrip violated his Eighth Amendment rights by denying him access to medical care after he fell on November 24, 2017. But the evidentiary record reflects Officer Jeffrey and Sgt. Lantrip did nothing to impede or delay Mr. Knighten's access to medical care. Instead, they each, on separate occasions, went so far as to find a nurse to see him. *See* Dkt. 68-4 at p. 22; dkt. 68-5 at p. 106 ("Reason for visit: seen at the request of custody [staff]."); dkt. 68-4 at p. 23.

In addition, Mr. Knighten admits that he did not require Officer Jeffrey or Sgt. Lantrip's assistance to request medical treatment. He was able to fill out and submit a health care request form on his own behalf. Dkt. 68-4 at p. 31. He also saw a nurse regularly when his medication was brought to his cell. *Id.* at p. 31. Mr. Knighten acknowledges that at no point did Sgt. Lantrip or Officer Jeffrey refuse to let Mr. Knighten see a nurse. Dkt. 68-4 at p. 26-27. Ultimately, in

6

December of 2017, Mr. Knighten was seen by Dr. Samuel Byrd, M.D. Dkt. 71 at p. 5; dkt. 68-5 at p. 98.

Mr. Knighten argues that after learning of his fall, Sgt. Lantrip and Officer Jeffrey should have called a signal 1000 over their radios, which would have resulted in an immediate response from medical staff. Dkt. 71 at p. 3. However, there is no evidence that Sgt. Lantrip or Officer Jeffrey believed that Mr. Knighten's injuries required an emergency medical response. Instead, the record reflects that they reported the incident and were told that medical would respond that day. "[W]hether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Jones v. Mathews*, 2 F.4th 607 (7th Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)). There is simply no evidence to support the claim that the defendants were responsible for medical staff's delayed response or that they believed that an emergency signal was necessary. *See Jones v. Mathews*, 2 F.4th 607 (7th Cir. 2021) (defendant was not deliberately indifferent where upon learning what was wrong, he sought medical attention on plaintiff's behalf); *Earl v. Racine Cty. Jail*, 718 F.3d 689, 692 (7th Cir. 2013) ("[T]he officer's prompt call to the nurse undermines any suggestion that he acted with the reckless or malicious intent required to sustain a deliberate-indifference claim.").

Under these circumstances there is no evidence that Sgt. Lantrip or Officer Jeffrey were deliberately indifferent to Mr. Knighten's injuries that resulted from the November 24, 2017 fainting spell.

**C. Claim against Sgt. Donaldson**

Mr. Knighten alleges that Sgt. Donaldson is liable for failing to properly respond to Mr. Knighten's concerns regarding parasites. But Sgt. Donaldson cannot be held liable under the Eighth Amendment simply because he requested a mental health consultation instead of a medical

7

provider visit. In any event, Mr. Knighten was seen by a mental health professional the same day he raised his concerns. Dkt. 68-5 at p. 96. And, the very next day, he was seen by medical staff. Dkt. 68-5 (December 30, 2017, nurse visit).[3] Under these circumstances, there is no evidence that Sgt. Donaldson ignored or impeded Mr. Knighten's request for medical care to treat bugs or parasites.

## IV.
## CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [68], is **granted**. Judgment consistent with this Order and with the Orders of July 2, 2018, dkt. [12], and July 20, 2020, dkt. [64], shall now issue.

**SO ORDERED.**

Date: 7/29/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[3] *See* Entry Granting Medical Defendants' Motion for Summary Judgment, Dkt. 64 at p. 19-21 (finding defendant Dr. Byrd was not deliberately indifferent to Mr. Knighten's complaints that he had a parasitic infection because he investigated and concluded that Mr. Knighten had blackheads and not a parasitic infection).

Distribution:

UNDRAY KNIGHTEN
111206
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

All Electronically Registered Counsel